IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE

Civil Case No. 06-cv-01263-LTB

CATHERYN M. BESSON,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

---

ORDER

---

Plaintiff, Catheryn M. Besson, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for disability insurance benefits, filed pursuant to 42 U.S.C. §§ 401-433. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist me in the determination of this appeal. After consideration of the parties' briefs, as well as the administrative record, I REVERSE the SSA Commissioner's final order and REMAND the case for further proceedings as set forth below.

## I. STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits filed in November of 1997. [Administrative Record ("AR") 22] The application was initially denied by an Administrative Law Judge ("ALJ"), on December 21, 1999, after an evidentiary hearing, and the SSA Appeals Council denied Plaintiff's request for review of the ALJ's determination. [AR 4] Plaintiff appealed, and I entered an order reversing and remanding the decision on March 7, 2002, on the basis that the ALJ erred relying conclusively on

the Medical-Vocational Guidelines (the "grids") when determining that Plaintiff could perform work available in the national economy, because the requisite underlying findings were not supported by substantial evidence. [AR 405, 411] On remand, I directed the Commissioner to determine whether Plaintiff's impairments prevent her "from doing any kind of work" and, in so doing, the Commissioner was required to consider the following evidence: the State Workers' Compensation disability decision; Plaintiff's complaints of sleep disturbance and headaches; and Plaintiff's treating physician's restrictions. [AR 419]

On remand, after another evidentiary hearing, the ALJ again denied Plaintiff application by a written ruling dated February 28, 2003. [AR 352] However, on appeal of that denial to this court, the SSA Commissioner sought and was granted a remand for a new hearing and decision, and for further development of the record. [AR 666]

A new hearing was held on December 7, 2005, and the ALJ subsequently issued a written decision on March 6, 2006, denying Plaintiff's application on the basis that she was not disabled prior to the date her insured status expired, in that she retained the residual functional capacity ("RFC") to perform a limited range of light work and, thus, she was not precluded from performing any of her past relevant work (Step Four). [AR 654, 664] In addition, the ALJ found that Plaintiff was not disabled by application of the grids resulting in a conclusion that there are a significant number of jobs that she could perform in the national economy (Step Five). [AR 664] The SSA Appeals Council declined to review the ALJ's determination, making the denial final for the purpose of judicial review. *See* 20 C.F.R. § 404.981. Plaintiff timely filed her complaint with this court on June 29, 2006, in which she again seeks review of the Commissioner's decision.

## II. FACTS

Plaintiff was born in 1968 and is a high school graduate with an additional year of college. [AR 22, 313, 655]  Her work history includes assembler, retail sales clerk, fast food worker, cashier, waitress, child care attendant, maid, home health aide, nanny and bartender.  [AR 53, 59, 315, 596, 623, 655]  Plaintiff stopped working on August 1, 1995, due to an injury she sustained while working as an assembler in August of 1994, and she was insured through December 31, 2001.  [AR 49, 595]

Plaintiff alleged that she developed an intolerance for repetitive motion of her upper extremities while working as an assembler in 1994, and she sought treatment for neck and bilateral upper extremity pain and daily headaches in August of 1994.  [AR 149, 656]  In addition, Plaintiff has been diagnosed with fibromyalgia and myofascial pain syndrome.  [AR 102, 152, 224]

Prior to the time she stopped working – from August 1994 through August 1995 – Plaintiff was treated and evaluated by numerous medical sources.  Throughout that time, her work limitations were consistent with sedentary work with various restrictions.  [AR 201]  For example, in March 1995, Plaintiff's treating physician, Dr. John Ogrodnick, released her to return to work "with limitations of no across table reaching, no overhead reaching[,] and no use of the [left upper extremity]".  [AR 109]  On the day she allegedly become disabled, August 1, 1995, Dr. Ogrodnick again released Plaintiff to work with the only limitation that she perform no repetitive activity with her upper extremity.  [AR 101]

In March and April of 1996, Plaintiff sought medical treatment for increased pain. [AR 174-75] At that time Dr. R. Light opined that although Plaintiff did not believe she could work, "she was perfectly able to work, and . . . was not incapacitated" with the following limitations: no overhead reaching, no lifting more than 10 pounds, no pushing/pulling more than 25 pounds, and no repetitive use of her arms. [AR 174-5] In addition, after an examination, Dr. Ogrodnick again released Plaintiff to work "with the same limitations of no repetitive upper extremity activity" on April 1, 1006. [AR 168] Also at that time, Dr. Vance J. Bray, a rheumatologist, examined Plaintiff and concluded that her shoulder pain was caused by rotator cuff tendinitis and her fibromyalgia. [AR 120]

In September 1996, Dr. David M. Weinstein examined Plaintiff and identified no objective abnormalities. Dr. Weinstein released Plaintiff after opining that she had reached a healing plateau and had reached maximum medical improvement. [AR 136]

On October 28, 1996, Dr. Ogrodnick also opined that Plaintiff had reached maximum medical improvement and rated her whole person impairment as 17%. [AR 141] Dr. Ogrodnick commented that her "medical condition has had much more of an impact on the life activities of Plaintiff tha[n] it should have. The patient remains inactive and unemployed despite encouragement by various providers to stay active. The situation is complicated by her multiple intolerance for the 'standard medications' and a tendency to seek out the oral remedies suggested by friends." [AR 142] Based on the recommendation of a work capacity assessment – performed on August 12, 1996, by Health South Rehabilitation Centers – Dr. Ogrodnick released Plaintiff from his care with the following light work restrictions: no use of her upper extremities for sustained overhead reaching or static bending; no lifting more than 15 pounds; no stooping more

than frequently; and no squatting, crawling, horizontal reaching, writing, or doing fine motor activities more than occasionally. [AR 123, 142] In addition, Dr. Ogrodnick noted that he had "personally encouraged the patient to proactively seek out employment and to remain active." [AR 142]

On April 2, 1997, Dr. Mary Shahzadi examined Plaintiff for an Independent Medical Examination. [AR 177] She diagnosed Plaintiff with bilateral shoulder cumulative trauma disorder with chronic bilateral shoulder and cervico-scapular myofascial pain syndrome with chronic sleep impairment. [AR 180] Dr. Shahzadi assigned Plaintiff a 10% whole person impairment rating. [AR 184] In July of 1997, Plaintiff underwent an Employability Evaluation in which vocational counselors concluded that Plaintiff "should be considered permanently and totally disabled." [AR 198, 207]

On January 3, 1998, Dr. Michael Finch performed a consultive examination and concluded that Plaintiff was "totally and completely disabled." [AR 222] On January 21, 1998, a non-examining physician evaluated Plaintiff's residual functional capacity ("RFC") and concluded that she had a capacity for a full range of light work. [AR 93] A second such State Agency RFC evaluation, on July 29, 1998, concluded that Plaintiff should be limited to: lifting 20 pounds occasionally and 10 pounds frequently, occasional stooping and overhead reaching, and fine manipulation limited to frequently but not constant, as well as an avoidance of cold weather. [AR 83-87] On April 8, 1998, a Colorado Workers' Compensation Division ALJ determined that Plaintiff was "permanently and totally disabled as a result of her occupational disease of fibromyalgia or cumulative trauma disorder." [AR 42]

On September 15, 1998, Plaintiff saw a podiatrist, Dr. Nicholas Sol, who found a congenital deformation of the digits in Plaintiff's feet muscle and strength asymmetry with asymmetric weakness noted on the left quadriceps. [AR 546] Dr. Sol opined that Plaintiff's abnormal gait style may be a "contributing factor in her continued musculoskeletal complaints." [AR 546] Treatment in the form of orthodontics relieved some of Plaintiff's symptoms and pain. [AR 547, 539]

Plaintiff then saw Dr. Russell Parker, beginning in November 1998, who assessed myofascial pain syndrome and accumulation trauma disorder. [AR 247] Dr. Parker treated Plaintiff with acupuncture and osteopathic manual treatment. On September 25, 2000, Dr. Parker wrote a letter on Plaintiff's request opining that she was "completely disabled from any work capacity at this time" due to her chronic pain syndrome and her secondary sleep disturbance. [AR 308] On December 12, 2001, Dr. Timothy O. Hall reported good response from two Botox injections, and slow, steady progress with an exercise program. [AR 551, 549]

## III. LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled, which is generally defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987).

Step One is whether the claimant is presently engaged in substantial gainful activity. If she is, disability benefits are denied. *See* 20 C.F.R. § 404.1520. Step Two is a determination whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. § 404.1520(c). If the claimant is unable to show that her medical impairments would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. § 404.1520(d). If the impairment is not listed, she is not presumed to be conclusively disabled. Step Four then requires the claimant to show that her impairment(s) and assessed RFC prevents her from performing work that she has performed in the past. If the claimant is able to perform her previous work, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(e) & (f).

Finally, if the claimant establishes a *prima facie* case of disability based on the four steps discussed, the analysis proceeds to Step Five where the Commissioner has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. § 404.1520(g).

## IV.  UNDERLYING RULING

The ALJ concluded that Plaintiff was not disabled. [AR 664] The ALJ first determined that Plaintiff was insured for benefits through December 31, 2001, and that Plaintiff had not engaged in any substantial gainful activity since the alleged onset of disability (Step One). [AR 663] The ALJ next found that Plaintiff had the following severe impairments: cervical, thoracic,

and lumbar spinal strain; myofascial pain syndrome, and fibromyalgia. [AR 663] However, because Plaintiff had no impairment or combination of impairments of such severity as to medically meet or equal any condition deemed to be so severe as to preclude substantial gainful employment (Step Three), the ALJ went on to determine whether Plaintiff retained the RFC to perform the requirements of her past relevant work. [AR 26]

The ALJ found that Plaintiff retained the RFC to perform a limited range of light work on and before her date last insured in the she was able to lift 20 pounds occasionally and 10 pounds frequently, with occasional stooping and reaching, frequent but no constant fine manipulation, and no cold weather. [AR 664] As a result, the ALJ determined that Plaintiff was able to perform her past relevant work as a bartender, maid, child care attendant, waitress, cashier, retail sales clerk, and assembler (Step Four). [AR 664] Because Plaintiff's impairments did not prevent her from performing her past relevant work, the ALJ found that Plaintiff was not disabled. [AR 664] Additionally, the ALJ further determined – using Medical-Vocational Rule 202-21 as a framework – that there are a significant number of jobs that Plaintiff could perform in the national economy, considering her age, education and RFC, such as gate guard and call out operator (Step Five). As a result, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act. [AR 664] This appeal followed.

## V. STANDARD OF REVIEW

The function of my review is limited to determining whether the correct legal standards were applied, and to evaluating whether the factual findings are supported by substantial evidence in the record as a whole. *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). "Substantial

evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen, supra*, 822 F.2d at 1521 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). I examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Casias v. Secretary of Health & Human Servs*., 933 F.2d 799, 800 (10th Cir. 1991)(*citing Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). I may not re-weigh the evidence or substitute my judgment for that of the ALJ. *See Casias v. Secretary of Health & Human Servs., supra*, 933 F.2d at 800; *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987).

**VI. ANALYSIS**

A. Weight to Physician's Opinions

Plaintiff's first complaint on appeal is that the ALJ failed to give the appropriate evidentiary weight to the opinions of her treating physicians. Because the ALJ's order does not state the weight he afforded Plaintiff's treating physicians, or the specific reasons for the weight assessed, I agree.

When evaluating a treating physician's opinion, the ALJ should "first consider whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.' If the answer to this question is 'no,' then the inquiry at this stage is complete." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004)(*quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003)). If the ALJ finds that the opinion is well-supported, "he must then confirm

that the opinion is consistent with other substantial evidence in the record." *Watkins v. Barnhart, supra*, 350 F.3d at 1300. If the treating physician's opinion is deficient in either of these respects, it is not entitled to controlling weight. *Id.*; *see also Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

If a treating physician's opinion is not entitled to controlling weight, it is still entitled to "deference," and must be weighed using the factors provided in 20 C.F.R. § 404.1527, which are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart, supra*, 350 F.3d at 1301. An ALJ must give good reasons for the weight assigned that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." *Id.* at 1300. An ALJ may reject a treating physician's opinion "only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Robinson v. Barnhart, supra*, 366 F.3d at 1082 (*quoting McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)).

Plaintiff asserts that the ALJ failed to properly assess the various medical opinions related to her functional capacity and limitations. The ALJ concluded that on and before her date last insured Plaintiff retained the RFC to perform a limited range of light work in that she was able to lift 20 pounds occasionally and 10 pounds frequently, with the following limitations: occasional

stooping and reaching, frequent but no constant fine manipulation, and no cold weather. The ALJ found that this RFC "considered" the physical limitations imposed by Drs. Ogrodnick and Light, and was consistent with the RFC found by the ALJ in the previous decision and the RFC evaluation dated July 29, 1998. [AR 660]

Although it was clear that Dr. Ogrodnick felt that Plaintiff lacked initiative and was employable, his final opinion regarding her functional limitations on October 28, 1996, included that she could only lift 15 pounds on an occasional basis, and she should do no overhead reaching or sustained static bending, and only occasional squatting, crawling, and horizontal reaching. [AR 141] Likewise, Dr. Light's opinion in March of 1996 was that Plaintiff was able to work, but required restrictions such as no overhead reaching, no lifting more than 10 pounds, no pushing/pulling more than 25 pounds, and no repetitive use of her arms. [AR 175]

The order is unclear as to the weight the ALJ afforded the opinions of Drs. Ogrodnick and Light in light of the inconsistencies with the RFC assigned by the ALJ. First, although the ALJ indicated that "greater weight is given to the opinion of Dr. Ogrodnick and Dr. Light" – in the context of given "no significant weight" to a Workers Compensation determination – the ALJ found only that the RFC assigned was "in consideration of these aforementioned physical limitations from Dr. Ogrodnick, Dr. Light, and the medical consultant who reviewed the record initially" but, admittedly, whose opinion "was not entitled to any weight as a medical source opinion." [AR 662, 660] As such, it is unclear what weight the ALJ afforded the opinions of Drs. Ogrodnick and Light. Although order indicated he gave their opinions "greater weight" than the Worker's Compensation determination, it certainly is not clear that he gave them controlling weight. The ALJ's order does not specifically consider whether these opinions were not "well-

supported by medically acceptable clinical and laboratory diagnostic techniques," or if they were not "consistent with other substantial evidence in the record" warranting a conclusion that they were not entitled to controlling weight. *Watkins v. Barnhart*, *supra*, 350 F.3d at 1300. Alternatively, if the ALJ gave Dr. Ogrodnick and Dr. Light's opinions regarding Plaintiff's functional limitations deference, after rejecting that they were entitled to controlling weight, the ALJ was required to weigh the opinions using the factors in 20 C.F.R. § 404.1527. *Watkins v. Barnhart*, *supra*, 350 F.3d at 1301.

The ALJ's order here simply was not"sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." *Id.* at 1300. As such, I conclude that the ALJ's order in legally insufficient and, on remand, I order that the ALJ assess each of Plaintiff's treating physician's opinions by the legal test and standards set forth in *Watkins v. Barnhart, supra.*

B. RFC Assessment

Plaintiff also contends that the ALJ erred when determining her RFC. First, to the extent that Plaintiff argues that her sleep disturbances and headaches should have been addressed in the RFC, in that they are medically determinable impairments, I conclude that the ALJ's rejection of Plaintiff's alleged headaches and sleep difficulties on her functional abilities is supported by substantial evidence in the record. *See* 20 C.F.R. § 404.1512(c)(providing that a claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled). [AR 659]

However, because I have concluded that the ALJ's order fails to adequately address the weight that was afforded to Plaintiff's treating physicians' opinions related to her functional abilities, I direct that the ALJ reassess Plaintiff's RFC in light of the resulting analysis of those opinions. *See generally Billups v. Barnhart,* 322 F.Supp.2d 1220, 1228 (D. Kan. 2004)(even though the ALJ properly determined that Plaintiff's testimony was not fully credible regarding her alleged limitations, the ALJ must still support his RFC determination with credible evidence from the record). Thus, after setting forth the weight given to the opinion of Plaintiff's treating physician, specifying the evidence relied upon in assessing Plaintiff's RFC, and resolving the inconsistencies in the record, the ALJ should apply such findings to reassess, if necessary, Plaintiff's RFC.

C.  Step Five of Sequential Evaluation

Plaintiff's final claim on appeal is that the ALJ erred in finding that there are a significant number of jobs in the national economy that Plaintiff could perform, resulting in a conclusion that she is not disabled at Step Five of the sequential evaluation process. Specifically, Plaintiff argues that although the ALJ may rely upon the testimony of a vocational expert to find that the Commissioner has met his burden of proving the existence of available jobs at Step Five, such reliance on a vocational expert must be based on a hypothetical question that relates with precision to all of her vocational impairments. Because she maintains that none of the hypothetical questions posed to the vocational expert followed exactly Plaintiff's assessed RFC, she argues that the ALJ erred in ruling that a significant number of jobs exist in the national economy that she could perform. The Commissioner does not directly challenge this assertion.

On remand, I direct that if the ALJ relies upon vocational expert testimony to prove the existence of jobs in the national economy that Plaintiff could perform given her RFC assessment, such reliance must be based on a hypothetical question that relates with precision to Plaintiff's assessed RFC impairments. *See generally Shepherd v. Apfel*, 184 F.3d 1196, 1203 (10th Cir.1999); *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir.1993).

Finally, I reject Plaintiff contention that she is entitled to a reversal and order for payment of benefits, as opposed to a remand for further proceedings. *See Miller v. Chater*, 99 F.3d 972, 978 (10th Cir. 1996)(remanding for the fifth time on the basis that courts cannot re-weigh the evidence in social security cases, but admonishing that the Commissioner "is not entitled to adjudicate a case *ad infinitum* until he correctly applies the proper legal standard and gathers evidence to support his conclusion").

Accordingly, IT IS ORDERED that the SAA Commissioner's decision is REVERSED, and the case is REMANDED to the Commissioner with direction to remand it to the ALJ for further proceedings consistent with this Order.

Dated: April __10__, 2007 in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, CHIEF JUDGE